Filed 7/27/23; Certified for Publication 8/18/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS et al., <br><br> Appellants, <br><br> v. <br><br> COUNTY OF LOS ANGELES et al., <br><br> Respondents. | B316067 <br><br> (Los Angeles County Super. Ct. No. 19STCP05186) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo and Mitchell L. Beckloff, Judges. Reversed and remanded with directions.

Rains Lucia Stern St. Phalle & Silver, Jacob A. Kalinski and Brian P. Ross for Appellants.

Miller Barondess, Mira Hashmall, Eleanor S. Ruth and Lauren M. Brody for Respondents.

_____

Three former deputies of the Los Angeles County Sheriff's Department (department) were discharged from their employment for alleged misconduct. The former deputies filed administrative appeals with the Los Angeles County Civil Service Commission (commission). While their appeals were pending, the former deputies executed settlement agreements with department personnel that purported to reinstate the former deputies to employment. The County of Los Angeles (county) thereafter refused to comply with these settlement agreements.

The former deputies and a labor union for department personnel (collectively, appellants) filed suit against the county, the Los Angeles County Board of Supervisors (board of supervisors or board), the department, the Los Angeles County Sheriff (sheriff), the Los Angeles County Counsel (county counsel), and the Director of Personnel for the County of Los Angeles (director of personnel) (collectively, respondents). Appellants sought enforcement of the settlements through mandamus, breach of contract, and promissory estoppel claims. They also requested a declaration that the county's rejection of the settlements is unlawful, and that the county's supposed blanket refusal to settle disciplinary cases against department employees violates the due process rights of labor union members.

The trial court sustained respondents' demurrers to appellants' pleading without leave to amend. Among other things, the court ruled the settlement agreements are void because county counsel did not approve them, and section 21 of the county charter (section 21) confers upon county counsel "exclusive charge and control of all civil actions and proceedings in which the County or any officer thereof, is concerned or is a

2

party." (Fn. omitted.) Appellants seek review of the ensuing judgment of dismissal.

On appeal, we hold that section 21 of the charter does not grant county counsel exclusive authority to settle appeals of discipline that are pending before the commission. Under the original version of the charter, which included section 21,[1] the commission did not hear appeals from discipline of county employees. Further, the grammatical structure of the phrase "civil actions and proceedings" in section 21 indicates county counsel's exclusive authority extends only to civil actions and civil proceedings. This conclusion is supported by provisions of the Code of Civil Procedure that existed when the original charter was drafted and ratified, and by subsequent Attorney General opinions. Respondents fail to show that the drafters and ratifiers of the original charter intended to grant county counsel exclusive charge and control of later-invented administrative appeals of discipline, or that subsequent amendments to the charter were intended to provide this exclusive authority to county counsel.

Notwithstanding our construction of section 21, we conclude the trial court did not err in sustaining the demurrers to the contract and mandamus claims because appellants have not demonstrated that the sheriff and his subordinates are authorized to bind the county to settlements of appeals before the commission. Furthermore, appellants fail to show that despite this defect, they can recover on their promissory estoppel and declaratory relief causes of action.

---

[1] All references to sections in a charter are to the Los Angeles County Charter unless provided otherwise.

3

We also conclude that with the exception of the portion of appellants' declaratory relief cause of action that is premised on an alleged procedural due process violation, the trial court erred in denying appellants leave to amend. Given that the trial court was reviewing appellants' first pleading and that appellants could potentially discover the legal basis (if any) for the department's alleged long-standing apparent belief that its personnel have authority to settle commission appeals on their own (i.e., without the consent of other county officials), we conclude that allowing appellants to file an amended pleading would not be an exercise in futility.

We thus reverse the trial court's judgment of dismissal and remand the matter for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

We summarize only those facts pertinent to our disposition of this appeal.

---

[2] Our Factual and Procedural Background is derived in part from undisputed aspects of the trial court's rulings and admissions made by the parties in their filings. (See *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2 [utilizing the summary of facts provided in the trial court's ruling]; Standards of Review, *post* [noting that the trial court's orders and judgments are presumed correct]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "].)

1. ***The verified petition for writ of mandate and complaint***

On December 5, 2019, appellants filed their verified petition for writ of mandate and complaint (petition/complaint).[3] Deputy John Doe I, Deputy John Doe II, and Deputy Jane Doe are former deputies of the department (collectively, the deputy appellants). "Association for Los Angeles Deputy Sheriffs ('ALADS') . . . is[ ] a recognized employee organization as defined in the Meyers-Milias-Brown Act [citation] representing sworn non-management peace officers employed by the Department and the County District Attorney's Office with regard to all matters concerning wages, hours and working conditions." ALADS brought suit "on behalf of all of its represented employees."

In the petition/complaint, each of the three deputy appellants alleges one cause of action for writ of mandate (the first, fourth, and seventh causes of action), one cause of action for breach of contract (the second, fifth, and eighth causes of action), and one cause of action for promissory estoppel (the third, sixth, and ninth causes of action). The tenth cause of action for declaratory relief is brought on behalf of ALADS and the deputy appellants.

It appears that in or about 2017, the deputy appellants were served with letters of intent to be discharged from employment. The deputy appellants participated in predeprivation hearings held in 2017 pursuant to *Skelly v. State*

---

[3] The remainder of Factual and Procedural Background, part 1 summarizes certain allegations from the petition/complaint. We express no opinion as to the veracity of these averments.

5

*Personnel Bd.* (1975) 15 Cal.3d 194 (*Skelly*), and were subsequently discharged from employment for alleged misconduct.[4]  Each deputy appellant filed an appeal of his or her discharge with the commission.

In 2019, while their respective appeals were pending, each deputy appellant entered into a settlement agreement with a chief at the department, the terms of which purported to reduce the discipline imposed and reinstate the deputy appellant's employment.  Respondents thereafter refused to comply with the terms of the settlements.  Although the petition/complaint does not detail the circumstances under which Deputy John Doe I became aware that respondents "refused . . . to reinstate [him] to his employment with the County and to provide him with all emoluments of employment," the pleading alleges that approximately two months after their settlements were executed, Deputy John Doe II and Deputy Jane Doe were "advised" that "County Counsel and/or . . . [the] Director of Personnel and/or . . . [the] Board of Supervisors vetoed" their settlements.

In their appellate brief, respondents assert that the settlement "agreements were not [in fact] approved by County Counsel or the Board[ of Supervisors,]" and appellants tacitly concede that point by failing to dispute it in their reply.  (See

---

**4**  (See *Chaplin v. State Personnel Bd.* (2020) 54 Cal.App.5th 1104, 1109, fn. 2 ["*Skelly [v. State Personnel Bd.* (1975) 15 Cal.3d 194,] requires that civil service employees be given notice of proposed disciplinary action, the reasons for the action, a copy of the charges and the written materials upon which they are based, and an opportunity to respond either orally or in writing.  [Citation.]  A '*Skelly* hearing' refers to the employee's opportunity to respond, and it has been described as an 'informal probable-cause-type proceeding.' "].)

6

*Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 (*Rudick*) [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].) Appellants also do not contest respondents' representation that the deputy appellants' appeals were still pending before the commission when they filed their petition/complaint. (See *Rudick*, at pp. 89–90.)

2. ***The trial court's rulings sustaining respondents' demurrers, the judgment, and appellants' notices of appeal***

The matter was initially assigned to the writs department of the trial court. Respondents demurred to the petition/complaint. The trial court sustained the demurrer, without leave to amend, as to the three causes of action for mandamus, to wit, the first, fourth, and seventh causes of action. The court ruled that appellants had "failed to state a claim for a writ of traditional mandamus without regard to a substantive determination concerning the validity of the settlement agreements." The court reasoned, "[I]t is well settled 'mandamus is not an appropriate remedy to enforce a contractual obligation against a public entity' " because "breach of contract is an adequate remedy at law, and the duty which mandamus enforces is not the contractual duty of the entity, but the official duty of its officer or board." After the court sustained this initial demurrer, the case was reassigned to the civil department of the trial court.

Respondents then filed a demurrer in the trial court to appellants' remaining causes of action. The trial court sustained the demurrer on the remaining causes of action without leave to

7

amend.[5]  In support of its decision, the trial court agreed with respondents that only the board of supervisors or county counsel could settle appeals before the commission.  With regard to the board of supervisors' authority, the court observed that under Government Code section 25203, "the Board 'shall direct and control the conduct of litigation in which the county, or any public entity of which the board is the governing body, is a party.' " (Quoting Gov. Code, § 25203.)

The trial court also agreed with respondents that section 21 establishes that the department lacked authority to enter into the settlements.  In pertinent part, section 21 provides:  "The County Counsel shall represent and advise the Board of Supervisors and all County, township and school district officers, in all matters and questions of law pertaining to their duties, and shall have exclusive charge and control of *all civil actions and proceedings* in which the County or any officer thereof, is concerned or is a party."  (Fns. omitted.)  (Italics added.)  In construing this provision, the trial court found persuasive respondents' assertion that "the use of 'proceedings' [in section 21] is meant to indicate matters distinct from 'civil actions,' such as administrative proceedings like [appellants'] appeal[s] to the Commission."

---

[5]  In its ruling on the demurrer, the trial court took judicial notice of various documents submitted by the parties, including the Los Angeles County Civil Service Rules (civil service rules) and a 2016 annotated edition of the charter published by the county (2016 annotated charter).  We also consider these two documents in deciding this appeal.  (See Standards of Review, *post* [noting that in reviewing an order sustaining a demurrer, an appellate court considers matters judicially noticed by the trial court].)

8

The trial court rejected appellants' argument that the term " 'proceedings' " in section 21 of the charter "does not refer to administrative appeals," but instead refers to civil matters such as "petitions to compel or confirm arbitration or petitions for mandamus." The court found such matters "can also be defined as civil actions," and "there must be a difference between 'civil actions' and 'proceedings' as used in the Charter." The trial court further concluded that sections 34 and 47.5 of the charter and rule 4.19 of the civil service rules utilize the term "proceedings" to refer to "matters before the Commission . . . ." The court opined that "[t]he most logical construction is that these Commission proceedings are the same proceedings found in . . . [section] 21."

Given its conclusion that "the settlement agreements are void as only the Board or the County Counsel can authorize [the] settlements," the trial court sustained the demurrer to appellants' breach of contract causes of action. The court further concluded that it "cannot use promissory estoppel to force [respondents] to uphold void settlement agreements," nor could the court "grant the declaratory relief requested by [appellants]."

On August 23, 2021, the trial court entered a judgment of dismissal in accordance with its rulings on respondents' demurrers. On October 12, 2021, ALADS appealed the judgment. On November 10, 2021, the deputy appellants filed a notice of cross-appeal of the judgment.

3.    ***Our request for supplemental briefing and the parties' responses thereto***

Oral argument was held on February 21, 2023. At oral argument, we asked the parties to provide supplemental briefing on three questions:

1. What, if any, legislative history materials reveal the drafters' or voters' intent in enacting the relevant provisions of the Los Angeles County Charter that would assist the Court's interpretation of those provisions?;

2. Starting at what point in the Sheriff's Department's (or other County departments') disciplinary processes is County Counsel's approval of the settlement agreements required?;[6] and

3. Is the Sheriff or his chief authorized to execute settlement agreements on the County's behalf?

Thereafter, respondents filed a supplemental brief, appellants filed a response thereto, and respondents filed a supplemental reply brief. We granted respondents' request for judicial notice of the annotated version of the county charter published by the county in 1919 (1919 annotated charter). In addition, we granted appellants' request for judicial notice of "Excerpts for the Manual of Policy and Procedures of the

---

[6] Respondents frame the second question in the manner shown in the textual sentence accompanying this footnote. On the other hand, appellants assert we did not "merely ask[ ] when County Counsel's involvement was required for disciplinary proceedings that lead to discharge," but we instead asked for briefing regarding the extent of county counsel's involvement in the sheriff department's (and other department's) "administrative proceedings generally . . . ." Because we ultimately conclude that section 21 does not grant county counsel exclusive power to settle disciplinary appeals before the commission (see Discussion, part A, *post*), we need not resolve the parties' dispute concerning the scope of our second question.

10

Los Angeles County Sheriff's Department, dated October 26, 2022" and two opinions issued by the Attorney General.

We deferred ruling on certain of respondents' requests for judicial notice. We address those requests below. (See Discussion, parts A.2.b & B, *post*; Disposition, *post*.)

## STANDARDS OF REVIEW

"We independently review the ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action." (*Santa Ana Police Officers Assn. v. City of Santa Ana* (2017) 13 Cal.App.5th 317, 323 (*Santa Ana Police Officers Assn.*).) "[W]e accept as true the well-pleaded allegations in [the] . . . complaint. ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] . . . . " [Citation.]' . . . . [Citation.]" (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) We also consider "matters of which judicial notice can and has been taken." (See *Santa Ana Police Officers Assn.*, at p. 323.) "We review the denial of leave to amend for abuse of discretion, asking whether there is 'a reasonable possibility that the complaint can be cured by amendment.' [Citation.]" (See *Nede Mgmt. Inc. v. Aspen American Ins. Co.* (2021) 68 Cal.App.5th 1121, 1129.)

" 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' [Citation.]" (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) Thus, " ' "it is the appellant's responsibility to affirmatively demonstrate error" ' " by " ' "supply[ing] the reviewing court with some cogent argument supported by legal analysis and citation to the record." '

11

[Citation.]" (See *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492, 497; *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*).) The appellant bears this burden of rebutting the presumption of correctness accorded to the trial court's decision, regardless of the applicable standard of review. (See *Los Angeles Unified School Dist.*, at p. 492 [noting that these principles apply to " ' "an appeal from any judgment" ' "]; see also *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 368, 399 [indicating that an appellant must affirmatively show the trial court erred even if the de novo standard of review applies].)

Additionally, "[w]hen the error is one of state law only, it generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574, citing *People v. Watson* (1956) 46 Cal.2d 818, 835.) An appellant bears the burden of satisfying this state law prejudice standard. (See *Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 532–533 [discussing the *Watson* standard]; see also *Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 721 ["[T]he ultimate burden of demonstrating *reversible* error is always on the appellant[,]" italics added].)

## DISCUSSION

We first determine whether the trial court properly construed section 21 because it is the central issue in this appeal. We hold that section 21 does not confer upon county counsel exclusive authority to settle appeals of discipline decisions pending before the commission.

12

Nevertheless, appellants have failed to demonstrate that the sheriff and his chiefs were authorized to execute on the county's behalf the settlement agreements at issue here. For that reason, the trial court did not err in sustaining the demurrers to appellants' claims for breach of contract and mandamus. We reject appellants' contention that even if the settlement agreements were invalid, we should nonetheless reverse the order sustaining the demurrer on their causes of action for promissory estoppel and declaratory relief.

Given (a) our conclusion that section 21 does not confer upon county counsel *exclusive* authority to settle appeals before the commission, and (b) the fact that the department has apparently taken the position that its personnel may execute these settlements without approval of other county officials, we conclude there is a reasonable possibility that appellants could amend their initial petition/complaint to establish that the sheriff and his subordinates have that authority. Respondents fail to demonstrate that affording appellants an opportunity to amend would be an idle act. Accordingly, we conclude the trial court abused its discretion in denying appellants leave to amend as to their contract, mandamus, and estoppel claims. We also hold appellants should be granted leave to replead their declaratory relief cause of action, except insofar as it is predicated on their legally defective procedural due process theory.

A. **Section 21 of the County Charter Does Not Confer Upon County Counsel Exclusive Authority to Settle Appeals Before the Commission**

The 1919 annotated charter indicates the following: (1) the original version of the charter was prepared by the board of freeholders on September 24, 1912, (2) the voters of the county

13

ratified the charter on October 5, 1912, (3) the charter was approved by the Legislature on January 29, 1913, and (4) the charter went into effect on June 2, 1913.[7]

Section 21 appears in the original version of the county charter. Although the charter has been amended several times, the original text of section 21 remains unchanged. Section 21 provides in full: "The County Counsel shall represent and advise the Board of Supervisors and all County, township and school district officers, in all matters and questions of law pertaining to their duties, and shall have exclusive charge and control of all civil actions and proceedings in which the County[8] or any officer thereof, is concerned or is a party. He shall also act as attorney for the Public Administrator in the matter of all estates in which such officer is executor, administrator with the will annexed, or administrator, and the County Counsel shall, in every such matter, collect the attorney's fees allowed therein by law and pay the same into the County Treasury." (Fns. omitted.)

On appeal, the parties offer competing interpretations of section 21. Appellants maintain county counsel's approval is not "required for settlements of pending administrative appeals" because "the word 'proceedings' in the phrase 'civil actions and proceedings' [in section 21] does not include pending

---

[7] The 1919 annotated charter indicates that Article XI, section 7 ½ of the 1911 version of our state's constitution authorized "qualified electors" to elect "[a] board of fifteen freeholders" for the purpose of proposing a county charter. The 1919 annotated charter also contains the text of the original charter.

[8] Although the 1919 annotated charter employs the word "country" instead of "County" here, this is a typographical error.

14

administrative appeals before th[e] Commission." Conversely, respondents assert " 'proceedings' as used in the Charter includes Appellants' administrative appeals before the Commission."**9**

Before turning to the substance of the parties' arguments, we acknowledge the legal principles governing our analysis. "The same rules of statutory interpretation that apply to statutory provisions also apply to local charter provisions." (*Giles v. Horn* (2002) 100 Cal.App.4th 206, 221 (*Giles*).) "When construing a statute, 'our goal is " 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' " ' [Citation.]" (*People v. Manzo* (2012) 53 Cal.4th 880, 886.) Put differently, our objective is to " ' "arriv[e] at the true [legislative] intent existing at the time the legislation was enacted." [Citation.]' [Citations.]" (See *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 724–725 (*People ex. Rel. Lockyer*); see also Scalia & Garner, Reading Law: The Interpretation of Legal Texts (2012) p. 78 [explaining that under the "Fixed-Meaning" canon of construction, "[w]ords must be given the meaning they had when the text was adopted," boldface omitted].)

In rejecting appellants' argument that the "proceedings" referenced in section 21 do not include disciplinary appeals before

---

**9** Although respondents observe that "County Counsel serves as the County's legal representatives [*sic*] in all legal issues under the first clause" of section 21, they do not claim this clause confers upon county counsel the *exclusive* authority to settle matters pending before the commission. Rather, respondents rely upon the text conferring upon county counsel "exclusive charge and control of all civil actions and proceedings in which the County or any officer thereof, is concerned or is a party." (Fns. omitted.)

the commission, the trial court cited sections 34 and 47.5 for the proposition that "the Charter refers to matters before the Commission as proceedings." In particular, the current version of section 34 provides in pertinent part: "The Commission shall propose and, after a public hearing, adopt and amend rules to govern its own *proceedings*." (Italics added.) Further, as relevant here, section 47.5(d) of the current version of the charter states: "In the event of any . . . strike [of the sort delineated elsewhere in section 47.5], it shall be the duty of the Chief Administrative Officer or appropriate appointing authority to identify any employee of the County under his jurisdiction who is in violation of the provisions of this Section [(e.g., an employee who participated in said strike)], and to initiate discharge *proceedings* against such employee in accordance with the applicable provisions of this Charter." (Italics added.) The court also found that interpreting both " 'civil actions' and 'proceedings' " as referring only to "civil matters . . . would make the latter superfluous."

The trial court's interpretation of the county charter is subject to de novo review. (See *Giles*, *supra*, 100 Cal.App.4th at p. 220.) As we explain below, we conclude the trial court's interpretation of section 21 of the charter is erroneous.[10] Disciplinary appeals before the commission did not exist when the original version of the charter was enacted. Further, the grammatical structure of section 21 and certain provisions of the

---

[10] We do not fault the trial court for failing to consider the import of the original version of the charter. It does not appear that when the court ruled upon respondents' demurrer to the contract, estoppel, and declaratory relief causes of action, either side had provided the court with the original text of the charter.

Code of Civil Procedure and opinions of the Attorney General indicate that section 21 conferred upon county counsel "exclusive charge and control" of only civil matters in which the county or any officer thereof was concerned or was a party. (Fns. omitted.)

Respondents, moreover, have not directed us to any evidence that the board of freeholders and the voters who ratified the original charter intended for section 21 to encompass new, later-developed types of proceedings in which the county or any officer thereof would be concerned or a party. Respondents also have not shown that the board of supervisors and the voters intended to expand the scope of county counsel's authority in the course of amending charter provisions relating to the commission's responsibilities. Accordingly, we hold that section 21 does not clothe county counsel with exclusive authority to compromise disciplinary appeals that are pending before the commission.

> 1. *Under the original version of the county charter, section 21 did not grant county counsel exclusive charge and control of disciplinary appeals before the commission*

First, we determine whether under the original charter, the commission heard appeals of discipline imposed on county employees. Next, we analyze the grammatical structure of section 21 and other evidence probative of the drafters' and voters' legislative intent concerning that provision.

17

   a. *The original version of the county charter*
    *did not authorize the commission to adjudicate*
    *disciplinary appeals*

  Respondents do not direct us to any provision of the original iteration of the county charter that granted the commission authority to hear appeals of discipline. Nor does it appear that any portion of the original charter could be construed as imposing that responsibility on the commission.

  For instance, none of the provisions in Article IX, entitled "Civil Service," required the commission to review discipline imposed on a county employee. In particular, and in contrast to the current version of section 34 on which the trial court relied, that original provision did not authorize the commission to "serve as an appellate body[,]" although it did indicate that matters before the commission were "proceedings . . . ."[11]

  Similarly, when the original section 34 listed the subject matter of the "rules for the classified service" that the commission was obligated to "prescribe, amend and enforce[,]" none included hearings on appeals of discharges or reductions of employees. Rather, section 34(13) required the commission to issue rules providing "[f]or discharge or reduction in rank or

---

  [11] Specifically, section 34 originally provided in pertinent part: "The Commission shall prescribe, amend and enforce rules for the classified service, which shall have the force and effect of law; shall keep minutes of its proceedings and records of its examinations and shall, as a Board or through a single Commissioner, make investigations concerning the enforcement and effect of this Article and of the rules and efficiency of the service. It shall make an annual report to the Board of Supervisors."

18

compensation after appointment or promotion is complete, only after the person to be discharged or reduced has been presented with the reasons for such discharge or reduction specifically stated, and has been allowed a reasonable time to reply thereto in writing." This provision also stated, "The reasons and the reply must be filed as a record with the Commission." Other items in section 34's list required the commission to prescribe rules governing the administration of the civil service system but did not authorize the commission to hear disciplinary appeals. For instance, section 34(2) required the commission to create rules "[f]or open, competitive examinations to test the relative fitness of applicants for such positions[,]" and section 34(3) called for the commission to promulgate rules "[f]or public advertisement of all examinations."

In contrast, in the current version of the charter, the subject matter of the civil service rules appears in section 35, rather than in section 34. Section 35(6) requires that these rules provide for "Civil Service Commission hearings on appeals of discharges and reductions of permanent employees."[12]

Additionally, the trial court relied upon section 47.5(d)'s employment of the term "proceedings" to support its conclusion that appeals of disciplinary matters before the commission constitute "proceedings" subject to county counsel's exclusive

---

[12] The original version of section 35 did not identify the subject matter of the civil service rules, but instead granted the commission the power to "suspend competition" for certain "position[s] requiring peculiar and exceptional qualifications . . . ." Like the original section 34, section 35 did not obligate the commission to hear appeals on discharges and reductions of employees.

charge and control for the purposes of section 21. That provision was not added to the charter until 1982.

We acknowledge that section 39 of the original charter authorized "any elector of the county" to submit to the commission "[c]harges against any person in the classified service[,]" and insofar as "[s]uch complaint" sought removal of "any person in the classified service of the county" who was a "holder of any elective or appointive county or township office," a portion of section 50 required the commission to "act[ ] upon" that elector's complaint "within twenty days after such filing." It appears that if the commission did not remove the employee within that timeframe, then section 50 allowed the complaining elector to petition for the recall of that holder of elective or appointive office. Furthermore, section 34(15) authorized the commission to "dismiss from the service those [employees] who f[ell] below [a] standard of efficiency established" by the "bureau of efficiency . . . ."[13]

Section 39, section 50, and section 34(15) do not establish that the commission served as a forum for appeals of employee discipline. Instead, they provide that the commission was acting as the initial decisionmaker, and not an appellate body, in the unique circumstances described in those three provisions of the original charter. Furthermore, unlike appeals of discipline before the commission that currently exist, it is not evident that section 39, section 50, or section 34(15) of the original charter created adversarial proceedings in which the county would

_____

[13] Section 39 has since been repealed, and section 50 no longer prescribes a process by which the commission acts upon complaints made by electors. Section 34(15) also does not appear in the current version of the charter.

20

participate.  Therefore, it does not seem that the county or any of its officers would be a party to, or concerned by, those matters such that county counsel could have possessed exclusive control over them pursuant to section 21.

Accordingly, the commission was not a forum for disciplinary appeals when section 21 was originally enacted.

> *b.  The grammatical structure of section 21, provisions of the Code of Civil Procedure, and certain Attorney General opinions indicate that section 21 initially conferred upon county counsel exclusive charge and control over only civil actions and civil proceedings*

Appellants argue that the adjective "civil" preceding "actions and proceedings" modifies "actions" and "proceedings." Although respondents' counterargument on this point is not altogether clear, they seem to assert that "civil" modifies only the "actions" mentioned in section 21, meaning that the "proceedings" identified in that provision include "proceedings" before the commission.  The grammatical structure of section 21 gives appellants the better argument.

Recall section 21 provides that "[t]he County Counsel . . . shall have exclusive charge and control of all civil actions and proceedings in which the County or any officer thereof, is concerned or is a party."  (Fns. omitted.)  Under the "series-qualifier canon," "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series [(e.g., 'actions and proceedings')], a prepositive or postpositive modifier [(e.g., the prepositive modifier, 'civil')] normally applies to the entire series."  (See Scalia & Garner, Reading Law:  The Interpretation of Legal Texts, *supra*, at p. 147, boldface omitted;

21

see also *Facebook, Inc. v. Duguid* (2021) 141 S.Ct. 1163, 1169 (*Facebook, Inc.*) [referring to this canon as a "conventional rule[ ] of grammar" that "generally reflects the most natural reading of a sentence"].)  This rule of grammar and canon of construction informs our interpretation of section 21.  (See *Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1411 [" 'The rules of grammar and canons of construction are . . . tools, "guides to help courts determine likely legislative intent." ' "]; Civ. Code, § 13 ["Words and phrases are construed according to the context *and the approved usage of the language*[,]" italics added].)

> We further note that declining to apply the series-qualifier canon to section 21 would produce an anomalous result.  For us to read section 21 such that "civil" modifies only "actions" but not "proceedings," we would need to interpret the provision as granting county counsel with exclusive authority over two independent categories of matters:  (1) "all civil actions"; and (2) "proceedings in which the County or any officer thereof, is concerned or is a party."  (Fns. omitted.)  This is because if we did not treat "actions" and "proceedings" as two nouns that are subject to the same modifiers, we would have no principled, textual basis for treating the postposition "in which the County or any officer thereof, is concerned or is a party" as applying to "all civil actions."  (Fns. omitted.)  We observe that respondents do not argue that county counsel has exclusive charge and control of all civil actions, regardless of whether the county or any officer thereof is concerned thereby or a party thereto.

> The trial court held that reading the adjective "civil" to apply both to "actions" and "proceedings" identified in section 21 would render the latter noun superfluous.  Respondents second this contention on appeal.  We acknowledge that " '[s]tatutes

must be interpreted, if possible, to give each word some operative effect[,]' [citation]" meaning that we should not " 'construe statutory provisions so as to render them superfluous.' [Citation.]"  (See *Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 390.)

As we explain below, under provisions in the Code of Civil Procedure in existence when the charter was drafted and ratified in 1912, there was at least one category of "civil proceeding" that did not constitute a "civil action" under our state's laws, to wit, special proceedings of a civil nature.  Thus, construing section 21 in accordance with the series-qualifier canon would not render the provision's reference to "proceedings" superfluous.[14] Furthermore, opinions issued by the Attorney General further suggest that the phrase "civil actions and proceedings" in section 21 refers to only civil matters.

More specifically, Code of Civil Procedure section 20 provides:  "Judicial remedies are such as are administered by the Courts of justice, or by judicial officers empowered for that purpose by the Constitution and statutes of this State."  (Code Civ. Proc., § 20.)  "Judicial remedies are divided into 'actions' and 'special proceedings.'  [Citation.]"  (*People v. Board of Parole Hearings* (2022) 83 Cal.App.5th 432, 445 (*People*), quoting Code Civ. Proc., § 21.)

At the time the charter was drafted and ratified in 1912, Code of Civil Procedure section 22 defined "[a]n action" as "an ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right,

---

[14] Unless otherwise specified, the provisions of the Code of Civil Procedure discussed in this part (1) are the current versions of those provisions and (2) were in effect in 1912 as well.

23

the redress or prevention of a wrong, or the punishment of a public offense." (Former Code Civ. Proc., § 22, enacted 1872.) "Actions are of two kinds: [¶] 1. Civil; and, [¶] 2. Criminal." (Code Civ. Proc., § 24.) In 1912, Code of Civil Procedure section 30 provided: "A civil action is prosecuted by one party against another for the enforcement or protection of a right, or the redress or prevention of a wrong."[15] (Former Code Civ. Proc., § 30, enacted 1872.) Since 1872, a "criminal action" has been defined in this state as "[t]he proceeding by which a party charged with a public offense is accused and brought to trial and punishment . . . ." (Pen. Code, § 683; see also Code Civ. Proc., § 31 ["The Penal Code defines and provides for the prosecution of a criminal action."].)

"Every other remedy is a special proceeding." (Code Civ. Proc., § 23.) " '[A] special proceeding is confined to the type of case which was not, under the common law or equity practice, either an action at law or a suit in equity.' [Citation.]" (*People*, *supra*, 83 Cal.App.5th at p. 446.) For instance, as was the case in 1912, "[w]rits of mandate and prohibition are denominated special proceedings of a civil nature." (See *People*, at p. 446, citing Code Civ. Proc., pt. 3; Code Civ. Proc., pt. 3, title I (Deering's 1909) [listing the "special proceedings of a civil nature" that existed at that time].) "Writs of mandate compel the performance of a ministerial duty [citation], and writs of prohibition arrest proceedings conducted in excess of the presiding entity's jurisdiction [citation]." (*People*, at p. 446, citing Code Civ. Proc., §§ 1085, 1102; see also former Code Civ. Proc.,

<hr>

[15] Under the current versions of Code of Civil Procedure sections 22 and 30, the word "declaration" appears just before "enforcement." (See Code Civ. Proc., §§ 22, 30.)

§ 1085, enacted 1872 [providing that a writ of mandate "may be issued . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office . . . ."]; former Code Civ. Proc., § 1102, enacted 1872 [providing that a writ of prohibition "arrests the proceedings of any tribunal . . . when such proceedings are without, or in excess of the jurisdiction of such tribunal . . . ."].)  Matters relating to arbitration were also denominated as special proceedings of a civil nature in 1912 (see Code Civ. Proc., pt. 3, former title X (Deering's 1909)), as is the case today (see Code Civ. Proc., pt. 3, title 9; see also *Villinger/Nicholls Development Co. v. Meleyco* (1995) 31 Cal.App.4th 321, 327 [ " 'Hearings to confirm an arbitration award are "special proceedings" as contrasted with "actions." ' "].)

Respondents counter that "the County Charter refers to 'civil actions' and 'proceedings,' not 'actions' and 'special proceedings.' "  They argue that "[t]here is no reason to discern from the different language in the Charter and Code of Civil Procedure that the Board intended to give the Charter the same meaning as the Code."  Respondents further contend that the Code of Civil Procedure's "use of the modifier 'special' suggests there are other proceedings *not covered* by the term."

Respondents' argument misses the mark.  We acknowledge that the aforementioned provisions from the Code of Civil Procedure utilize the term "special proceedings" and not "civil proceedings," and that the two terms are not necessarily synonymous.  That observation does not undercut our conclusion that a special proceeding under the Code of Civil Procedure is an example of a civil proceeding that is not a civil action.

25

In addition, two Attorney General opinions are consistent with our construction of section 21.[16]

In 1946, the county counsel of San Bernardino County asked the Attorney General "whether proceedings under the Red Light Abatement Act of 1913 [citation], and the Unlawful Liquor Sales Abatement Law [citation], should be instituted by the di[st]rict attorney or the county counsel in those counties having a county counsel." (See 8 Ops.Cal.Atty.Gen. 110 (1946).) In concluding that these actions were in the purview of the district attorney, the Attorney General observed that the phrase "all . . . civil actions or proceedings in which the county or any . . . officer thereof is concerned or is a party" in former Political Code section 4153, subdivision 8 was substantially similar to text included in the Los Angeles County Charter.[17] (See 8 Ops.Cal.Atty.Gen. 110–112 (1946), italics omitted.) The Attorney General then

_____

[16] We may consider Attorney General opinions in construing section 21 of the charter. (See *Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1087, fn. 17; 7 Witkin, Summary of Cal. Law (11th ed. 2017) Const. Law, § 138, pp. 249–251 ["Among the permissible aids to construction are the following: [¶] . . . [¶] . . . *Attorney General's opinion[s]*."].)

[17] Political Code section 4153 was later repealed. (See Stats. 1947, ch. 424, § 5, pp. 1307–1309 [repealing Pol. Code, § 4153; see also *People v. Municipal Court* (1972) 27 Cal.App.3d 193, 200 [noting that portions of Pol. Code, § 4153 were later recodified in certain Gov. Code sections].) Although the statute repealing Political Code section 4153 was itself later repealed (see Stats. 1979, ch. 373, § 420), the Legislature did not thereby revive Political Code section 4153. (See Gov. Code, § 9607, subd. (a) [providing that, as a general rule, "no statute or part of a statute, repealed by another statute, is revived by the repeal of the repealing statute"].)

indicated that county counsel's authority under former Political Code section 4153, subdivision 8 was limited to cases "in which the county, as a political entity, is interested in a financial way or by reason of its ownership of property." (See 8 Ops.Cal.Atty.Gen. 112 (1946).) The Attorney General thereafter remarked, "It is this class of civil cases, that is, those arising in the conduct of the business of the county, the handling of which has been committed to the county counsel." (*Ibid.*) Thus, although the Attorney General was not directly interpreting section 21, his conclusion that the phrase " 'civil actions or proceedings in which the county or any . . . officer thereof is concerned or is a party' " refers to a "class of civil cases" further indicates that our grammatical construction is the most natural reading of comparable language in section 21. (See 8 Ops.Cal.Atty.Gen. 110–112 (1946).)

The Attorney General made a similar observation in an opinion issued 27 years later. The county counsel and the district attorney of Sonoma County had asked the Attorney General: "When an order issues in private civil litigation (injunction action) adjudging a party in contempt of court, levying a fine, and reciting that if the fine is not paid by a given date execution shall issue to collect it, does the district attorney or county counsel have the duty or authority to procure issuance of execution to collect the fine?" (56 Ops.Cal.Atty.Gen. 53 (1973).) In analyzing this issue, the Attorney General noted that Government Code section 26529 provides in part: " 'The county counsel shall defend or prosecute all *civil actions and proceedings* in which the *county* or any of its officers is concerned or is a party . . . .' " (See 56 Ops.Cal.Atty.Gen. 55 (1973), quoting Gov. Code, § 26529, subd. (a).) Just like former Political Code section 4153, subdivision 8, this Government Code provision closely resembles section 21.

27

The Attorney General thereafter stated that "in essence the county counsel's primary responsibilities are as to *civil matters in which the county is interested* . . . ."  (See 56 Ops.Cal.Atty.Gen. 56 (1973), italics added.)  The Attorney General ultimately concluded that "the district attorney should collect the civil contempt fine involved [t]herein" largely because of the criminal nature of "the punishment imposed[,]" and that another provision of the Government Code authorizes a trial judge to "request the county counsel to execute upon a contempt fine levied in a civil action."  (See 56 Ops.Cal.Atty.Gen. 53–57 (1973), italics added.)

In sum, we hold that under the original version of the charter, county counsel had exclusive charge and control of civil actions and civil proceedings, neither of which could have included appeals of discipline before the commission that did not exist when section 21 was enacted.  We next address whether section 21 currently grants county counsel exclusive power to settle such appeals.

2.    *Respondents fail to show that because of certain amendments made to the county charter, section 21 now confers upon county counsel exclusive charge and control of appeals of discharges pending before the commission*

Even though county counsel could not have possessed the sole power to compromise appeals of discipline before the commission when the charter initially became effective, we can conceive of two scenarios in which the legislative body responsible for enacting the charter's provisions could have manifested its intention to expand the county counsel's authority to encompass such appeals:  (1) if the board of freeholders and ratifiers of the original charter intended for the phrase "all civil

28

actions and proceedings in which the County or any officer thereof, is concerned or is a party" (fns. omitted) to include such later-created commission proceedings; or (2) if in the course of amending other portions of the charter, the board of supervisors and the voters intended to grant that power to county counsel.[18] Respondents fail to substantiate either theory.[19]

> a. *Respondents fail to show the rule of prospective operation supports their construction of section 21*

Sutherland recognizes that under "the rule of prospective operation[,]" "a statute expressed in general terms and written in the present or future tense[ ] applies to existing things and conditions and also prospectively to future things and conditions." (See 2B Sutherland, Statutory Construction (7th ed. 2022) § 49:2, fn. omitted; see also *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 777–778 & fn. 7 [relying on passages from Sutherland, Statutory Construction in the course of construing a state statute].) For this rule to apply, the legislation must be "written in terms broad enough to cover circumstances

---

[18] The 2016 annotated charter indicates that the board of supervisors proposed, and the voters ratified, certain charter amendments that we address in greater detail in Discussion, part A.2.b, *post*.

[19] (See *In re D.N.* (2020) 56 Cal.App.5th 741, 767 (*D.N.*) [" ' "Although it is the appellant's task to show error, there is a corresponding obligation on the part of the respondent to aid the appellate court in sustaining the judgment. '[I]t is as much the duty of the respondent to assist the [appellate] court upon the appeal as it is to properly present a case in the first instance, in the court below.' " ' "].)

unanticipated at the time of enactment." (See 2B Sutherland, Statutory Construction, *supra*, § 49:2; see also *People ex rel. Lockyer, supra*, 37 Cal.4th at p. 724 [indicating the objective of statutory construction is to " ' "arriv[e] at the true intent existing at the time the legislation was enacted" ' "].)

Arguably, the drafters and ratifiers of the original charter intended the phrase "all civil actions and proceedings in which the County or any officer thereof, is concerned or is a party" to cover at least some actions and proceedings that did not yet exist in 1912. (Fns. omitted.) Nevertheless, it is not apparent that this phrase from section 21 includes appeals before the commission. As explained in Discussion, part A.1.b, *ante*, under the "most natural reading" of the text, the provision references civil actions and *civil* proceedings. (See *Facebook, Inc.*, *supra*, 141 S.Ct. at p. 1169.)

Furthermore, respondents do not argue that an appeal heard by the commission constitutes a civil action or a civil proceeding. In fact, they refer to these appellate matters as "*administrative* appeals before the Commission." (Italics added.) When the charter was ratified in 1912, the legal profession used the terms "civil" and "criminal" to refer to different types of matters over which courts have jurisdiction, the former of which involved "private rights and remedies," and the latter of which "pertain[ed] to or [was] connected with the law of crimes, or the administration of penal justice . . . ." (See Black's Law Dict. (2d ed. 1910) p. 203, cols. 1–2 [entry for "civil" and subentry for "civil side"]; *id.* at p. 300, col. 2 [adjective entry for "criminal"].)[20]

---

[20] We take judicial notice of the Black's Law Dictionary entries discussed in this opinion as they are probative of the

30

The version of Black's Law Dictionary then in effect also indicated that the adjective "administrative" referred to an "executive or ministerial action" that was not of a "judicial" character. (See Black's Law Dict. (2d ed. 1910) p. 38, col. 1.) Thus, we cannot conclude that the board of freeholders employed language of sufficient breadth to include appeals of discipline before the commission that would later come into existence.

> b. *Respondents fail to establish that subsequent amendments to the charter were intended to expand county counsel's authority under section 21*

After the original charter was ratified, section 34 was amended such that it now provides that "[t]he Civil Service Commission shall serve as an appellate body in accordance with the provisions of Sections 35(4) and 35(6) . . . and as provided in the Civil Service Rules"; section 35 was amended to add subdivision (6) thereof, thereby requiring the issuance of civil service rules providing for "Civil Service Commission hearings on appeals of discharges and reductions of permanent employees"; and section 47.5(d) was added, which provides for the "initiat[ion of] discharge proceedings against [an] employee" under certain circumstances. Although our record does not contain the

___

meaning of section 21. (See *Golden Security Thrift & Loan Assn. v. First American Title Ins. Co.* (1997) 53 Cal.App.4th 250, 256 [indicating that an appellate court may take judicial notice of "various dictionary definitions" of a term]; see, e.g., *People v. Leiva* (2013) 56 Cal.4th 498, 507 [consulting Black's Law Dictionary in the course of construing a legal term included in a statute].)

31

legislation amending these charter provisions, the 2016 annotated charter reveals that section 34 was amended in 1940, 1946, 1948, 1954, 1972, and 1978; section 35 was amended in 1978; and section 47.5 was added in 1982.

We recognize the general rule that if a legislature amends a provision, "[t]he original section as amended and the unaltered sections of the act, code, or compilation of which it is a part, and which relate to the same subject matter, are read together." (See 1A Sutherland, Statutory Construction (7th ed. 2022) § 22:35.) Thus, arguably because these changes to sections 34 and 35 and the addition of section 47.5(d) augmented the scope of commission proceedings to include appeals of discharges, the "proceedings" subject to county counsel's exclusive charge and control in section 21 now include these appeals.

Yet, the grammatical structure of section 21 has remained unchanged since voters approved the provision in 1912. (See Discussion, part A, *ante* [beginning of Discussion, part A, which explains that the original version of section 21 remains in effect]; Discussion, part A.1.b, *ante* [discussing the application of the series-qualifier canon to section 21].) Furthermore, even though we asked for briefing on "legislative history materials" concerning "the drafters' or voters' intent[21] in enacting the relevant provisions of the Los Angeles County Charter that would assist the Court's interpretation of those provisions," respondents failed to provide any historic materials relating to these amendments.

---

**21** (See 2B Sutherland, Statutory Construction, *supra*, § 51:3 [indicating that the interpretive doctrine of "*in pari materia*[,]" that "related statutes . . . should be construed together[,]" should be utilized only if it is indicative of "legislative intent"].)

Instead, they contend their "research has not revealed anything that directly illuminates the drafters' and the voters' intent in vesting County Counsel with 'exclusive charge and control of all civil actions and proceedings in which the County or any officer thereof, is concerned or is a party[.]' [Citation.] " (Quoting § 21.)

In response to our request, respondents pivot our focus to "County law provisions" that post-date the 1912 ratification of the original charter, which they contend "are consistent with County Counsel's role as the County's attorneys—whereby it [*sic*] oversees the County's legal affairs and is exclusively authorized to settle claims by and against the County, subject to Board approval where the claim exceeds $20,000." Specifically, respondents note that rule 4.19 of the civil service rules describes "the matters before the Commission as 'proceedings.' " They also cite Los Angeles County Code sections 2.14.010 and 2.14.020 in support of their argument that "any settlement agreement in 'any action or proceeding' involving the County or one of its officers must involve County Counsel and, where that settlement agreement requires the expenditure of more than $20,000, the Board of Supervisors must also approve the settlement." (Quoting L.A. County Code, § 2.14.010.)

It is unclear whether respondents are arguing that these "County law provisions" indicate that, in amending the charter to modify the nature and scope of the commission's responsibilities, the board of supervisors and the electorate had intended to confer upon county counsel exclusive authority to settle appeals before the commission. In any event, respondents fail to demonstrate that rule 4.19 and the L.A. County Code provisions they cite support that position.

Rule 4.19 of the civil service rules, last amended in 1988, provides: "Pursuant to Charter Section 34, the civil service commission shall adopt and amend rules to govern its own proceedings, and cause such rules to be published and distributed to all county departments and districts and all certified organizations. In case of conflict between these Rules and rules adopted by the commission, the provisions of these Rules shall prevail." This rule's reference to the commission's "own proceedings" simply mirrors section 34's use of that term to refer to matters before that body. Consequently, rule 4.19 does not shed any light on whether post-1912 amendments to the charter were intended to confer upon county counsel exclusive authority to settle commission appeals.

Los Angeles County Code sections 2.14.010 and 2.14.020 do not either. Instead, they either do not apply on their face or merely raise an interpretive question analogous to the one before us. More specifically, whereas the key question before us is whether "civil actions and proceedings" in section 21 includes appeals of discipline pending before the commission, respondents' citation to Los Angeles County Code section 2.14.20 leaves unanswered a related interpretive question—whether the "claim[s] or suit[s]" county counsel is empowered to settle (up to a certain dollar amount) likewise include appeals of discipline before the commission. (See L.A. County Code, § 2.14.020.A–B.) Accordingly, respondents' reliance on these ordinances is unavailing.

Section 2.14.010, entitled "Actions against county and notice of uncollected claims—Notification to county counsel[,]" and enacted in 1942, provides: "It shall be the duty of the head of each office or department to notify the county counsel in writing

of each and every claim for money, damages or redress of any kind whatsoever in favor of the county, or in which the county is interested, which is uncollected after due diligence and which justifies suit for collection, to the end that suit may be filed within the time allowed by law; and it shall be the duty of the head of each office or department to transmit to the county counsel immediately any and all pleadings or papers served upon such officer in any action or proceeding against such officer in his official capacity or against the county." (L.A. County Code, § 2.14.010, boldface omitted from first quotation.)

On its face, Los Angeles County Code section 2.14.010 appears to require notice to county counsel of claims belonging to the county and not claims of its employees. (See L.A. County Code, § 2.14.10 [requiring notice to county counsel of "claim[s] for money, damages or redress of any kind whatsoever *in favor of the county, or in which the county is interested, . . . which justif[y] suit[s] for collection, to the end that suit may be filed* within the time allowed by law[,]" italics added].) Further, we acknowledge that the second clause in section 2.14.010 obligates "the head of each office or department to transmit to the county counsel immediately any and all pleadings or papers served upon such officer in any action or proceeding against such officer in his official capacity or against the county." (See L.A. County Code, § 2.14.010.) Nevertheless, assuming arguendo that an appeal before the commission constitutes an "action or proceeding" for the purposes of this clause, this portion of the ordinance appears to be a means of facilitating county counsel's duty to "represent and advise the Board of Supervisors and all County, township and school district officers, in all matters and questions of law pertaining to their duties," rather than evidence that an appeal

35

before the commission is a "proceeding" subject to county counsel's "exclusive charge and control" under section 21. (Fns. omitted.)

Respondents also rely on Los Angeles County Code section 2.14.020, entitled "Suits or claims—Settlement procedure" and enacted in 1942 and amended in 1974 and in 1982. (See L.A. County Code, § 2.14.020.) Subdivisions A and B of that code section provide: "A. Except as otherwise provided in this section, where, in the opinion of the county counsel, the board of supervisors may legally compromise or settle any claim or suit by or against the county, or any officer thereof, the county counsel shall report to the board of supervisors the results of his investigation concerning such suit or claim, together with such recommendation for its disposition as he may have, for the information of the board of supervisors in its action. [¶] B. Where, after proper claim has been filed and upon investigation by the county counsel, he finds that there exists a probable liability on the part of the county of Los Angeles as to a claim or suit, and where the amount necessary to be expended in order to pay, settle or compromise such claim or suit does not exceed the sum of $20,000.00, the county counsel is authorized to pay, settle or compromise such claim or suit pending against the county of Los Angeles, or any officer or employee thereof for which the county may ultimately be liable, in an amount not exceeding $20,000.00, as to any person, firm or corporation, without the necessity of first receiving the approval of the board of supervisors."[22] (L.A. County Code, § 2.14.020, subds. A–B.)

---

[22] Los Angeles County Code section 2.14.020, subdivision C concerns county counsel's authority to "settle or

36

Respondents do not argue, and therefore fail to demonstrate, that a discharged county employee's civil service appeal constitutes a "claim or suit" for the purpose of Los Angeles County Code section 2.14.020. Indeed, section 35(6) of the charter refers to those matters as "appeals of discharges[,]" and respondents characterize them as "challenges by County employees to disciplinary decisions." Without any further analysis by respondents, we cannot leap to the conclusion that the ordinance should inform our interpretation of section 21's reference to "civil actions and proceedings . . . ." (Fns. omitted.) (See also *Inyo Citizens for Better Planning v. Inyo County Bd. of Supervisors* (2009) 180 Cal.App.4th 1, 14 (*Inyo Citizens for Better Planning*) ["We do not serve as 'backup appellate counsel,' or make the parties' arguments for them."].)

We further note that Los Angeles County Code section 2.14.020 is distinguishable from the San Bernardino County Code provision upon which respondents also rely in their supplemental briefing. They note that San Bernardino County Code section 12.1907, subdivision (a)(1) "expressly delegates to its county counsel authority to compromise or settle any threatened or pending action against the County or its officers up to $50,000, including any matter 'subject to litigation, whether in a court of law or administrative proceeding.' " (Quoting San Bernardino

---

compromise any claim or suit of the county of Los Angeles *against third parties* . . . ." (See L.A. County Code, § 2.14.020, subd. C, italics added.) Respondents do not argue that this provision has any bearing on this case.

County Code, § 12.1907, subd. (a)(1).)[23]  Notably, the term
"administrative proceeding" in San Bernardino County Code
section 12.1907, subdivision (a)(1) is absent from Los Angeles
County Code section 2.14.020's description of "claim[s] or suit[s]"
subject to county counsel's authority.  (See L.A. County Code,
§ 2.14.020, subds. A–B.)  Thus, respondents' citation to San
Bernardino County Code section 12.1907, subdivision (a)(1)
provides no assistance to the interpretive task before us.

In sum, we hold that the original version of the charter
conferred upon county counsel the exclusive authority to settle all
civil actions and civil proceedings in which the county or any
officer thereof was concerned or was a party.  We further
conclude respondents have failed to show that (a) the drafters
and ratifiers of the original charter intended for county counsel's
exclusive authority to extend to administrative proceedings that
did not yet exist, or (b) the drafters and ratifiers of subsequent
amendments to the charter intended to expand county counsel's
exclusive authority to cover disciplinary appeals pending before
the commission.  Therefore, section 21 does not grant county
counsel exclusive authority to settle such appeals.

_____

[23] Respondents seek judicial notice of the San Bernardino
County Charter and the San Bernardino County Code.  We grant
respondents' request as to San Bernardino County Code
section 12.1907.  (Evid. Code, §§ 452, subd. (b), 459.)  We deny
the remainder of their request because respondents do not
explain the relevance of the San Bernardino County Charter or
any portion of that county's code other than section 12.1907.  (See
*State Comp. Ins. Fund v. ReadyLink Healthcare, Inc.* (2020)
50 Cal.App.5th 422, 442 (*State Comp. Ins. Fund*) [denying a
request for judicial notice of "materials . . . not relevant to [the
appellate court's] determination of the issues on appeal"].)

**B. Appellants' Contract and Mandamus Claims Fail Because They Do Not Demonstrate that the Sheriff and His Subordinates Were Authorized to Execute the Settlements**

In their petition/complaint, the deputy appellants allege contract claims and claims for traditional writ of mandate under Code of Civil Procedure section 1085, whereby they seek damages for breaches of their settlement agreements and enforcement of those agreements. The trial court sustained the demurrer without leave to amend as to the contract claims—the second, fifth, and eighth causes of action—on the ground that the settlements are "void because only the Board/County Counsel could enter them." Concerning county counsel's powers, the trial court found that section 21 confers upon county counsel exclusive authority to execute the settlements. Conversely, the court sustained the demurrer without leave to amend as to the mandamus claims—the first, fourth, and seventh causes of action—on a ground independent of "the validity of the settlement agreements."[24]

As we have already held, section 21 does not afford county counsel exclusive authority to settle disciplinary appeals before the commission. It does not necessarily follow, however, that department personnel were authorized to execute the instant settlements.

Government Code section 23004, subdivision (c) grants the county the power to "[m]ake contracts . . . ." (See Gov. Code, § 23004, subd. (c).) Government Code section 23005 in turn

_____

[24] We discuss the trial court's treatment of the mandamus claims in Discussion, part F, *post*.

provides: "A county may exercise its powers only through the board of supervisors or through agents and officers acting under authority of the board or authority conferred by law." (*Id.*, § 23005.)

Thus, the validity of the deputy appellants' settlement agreements hinges on whether the chiefs executing them were "acting under authority of the board or authority conferred by law" for the purposes of Government Code section 23005. (See Gov. Code, § 23005; see also *Katsura v. City of San Buenaventura* (2007) 155 Cal.App.4th 104, 109 (*Katsura*) [" ' "No government, whether state or local, is bound to any extent by an officer's acts in excess of his . . . authority." ' "]; Factual & Procedural Background, part 1, *ante* [noting that the appellants allege that each settlement was executed by a chief at the department in 2019].)

We asked the parties for supplemental briefing on whether "the Sheriff or his chief [is] authorized to execute settlement agreements on the County's behalf."[25] In response, appellants provided documents they identify as "[e]xcerpts for the Manual of Policy and Procedures of the Los Angeles County Sheriff's Department, dated October 26, 2022." They assert the manual "plainly provides authority to the Sheriff's subordinates to settle matters that are pending before the Commission." For this

---

[25] Respondents do not claim to have demurred on precisely this ground (i.e., the *absence* of a grant of authority to the sheriff and his chiefs to settle appeals before the commission). Regardless, we reach this question because "it presents a pure question of law and the parties have been given an opportunity to address it." (See *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 732, fn. 2.)

proposition, appellants direct us to section 3-04/020.80 of the manual, which provides in pertinent part: "If discipline has been imposed and the discipline is being appealed to the Civil Service Commission and there are discussions about settling the case, the division chief or division director shall consult with a constitutional policing advisor[26] and then obtain concurrence from the Undersheriff prior to entering into a settlement agreement." Appellants' reliance on the manual is unavailing.

First, appellants do not explain why a manual dated October 26, 2022 would apply to settlements reached in 2019. Appellants thus fail to demonstrate that these manual excerpts show the chiefs had the authority to enter into those settlements.

Second, the language at issue is ambiguous. The fact that section 3-04/020.80 describes a consultation procedure that must be followed before entering into a settlement agreement does not necessarily mean the division chief or director alone has the authority to bind the county; the specified consultation procedure is also susceptible to a reading that following consultation, further approval of the settlement agreement (by the board or someone else) is required.

More fundamentally, even if we agree with appellants' reading (an issue we do not decide), appellants do not establish that (1) the manual is a proper delegation of authority from the board of supervisors to department personnel to settle appeals of discipline,[27] or (2) the manual otherwise lawfully authorizes

_____

**26** Neither side identifies this official or describes his or her responsibilities.

**27** (See *Golightly v. Molina* (2014) 229 Cal.App.4th 1501, 1505, 1515 [holding that Gov. Code, § 23005 permits a county

41

department personnel to bind the county to those settlements. With respect to the delegation issue, sections 1-01/010.01, 1-01/000.00, 1-01/030.00, and 1-01/040.00 of the manual indicate that this document was prepared by department personnel, and appellants do not direct us to any evidence that the board of supervisors approved it. Next, appellants do not argue—let alone offer any supporting authority demonstrating—that this internal policy manual constitutes the sort of "law" that for the purposes of Government Code section 23005, could "confer" upon the sheriff and his subordinates the power to act on behalf of the county. (See Gov. Code, § 23005.) These failures cogently to support appellants' contentions constitute a waiver of their argument that the department manual satisfies the requirements of Government Code section 23005.[28] (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' "].)

_____

board of supervisors to delegate certain powers to county officials].)

[28] We note that appellants also rely upon section 3-01/122.15 of the manual, which requires department personnel to obtain approval from the sheriff or his designee for settlements of civil service appeals of discipline exceeding 15 days' suspension, and to obtain the approval of the County Equity Oversight Panel (CEOP) "[i]n all other cases . . . ." In light of our conclusion that appellants have not shown the department manual constitutes a delegation of authority from the board of supervisors or "authority conferred by law" for the purposes of Government Code section 23005, we do not discuss section 3-01/122.15 further.

Because appellants have failed to show that the chiefs were authorized to enter into the settlements with the deputy appellants, their contract causes of action in the pleading before us against the county fail.[29] (See *Katsura, supra,* 155 Cal.App.4th at p. 109; *San Diego City Firefighters, Local 145 v. Board of Administration etc.* (2012) 206 Cal.App.4th 594, 609 (*San Diego City Firefighters, Local 145*) [" '[A] contract entered into by a governmental entity without the requisite constitutional or statutory authority is void and unenforceable.' "].)

The deputy appellants' mandamus claims are likewise predicated on the settlement agreements. Because we hold that appellants have failed to demonstrate that the chiefs were authorized to enter into those settlement agreements, and those agreements are thus unenforceable, the deputy appellants fail to state viable claims for mandamus relief. (See *California Assn. for Health Services at Home v. State Dept. of Health Services* (2007) 148 Cal.App.4th 696, 704 (*California Assn. for Health Services at Home*) [holding that to obtain "the issuance of a traditional writ of mandate[,]" the petitioner must show, inter alia, "a clear, present and beneficial right . . . to the performance of" a "duty on the part of the respondent"].)

The trial court thus did not err in sustaining respondents' demurrers to the first, second, fourth, fifth, seventh, and eighth

---

[29] Respondents assert that the instant action "is in all respects an official-capacity suit and, therefore, is properly treated as a suit against the County." By failing to contest that characterization in their reply brief, appellants impliedly admit it is accurate. (See *Rudick, supra,* 41 Cal.App.5th at pp. 89–90.)

causes of action.[30]  As set forth in our Discussion, parts E–G, *post*, we also conclude appellants should be given leave to amend as to these causes of action.

## C. Appellants Fail To Demonstrate That, Despite the Invalidity of the Settlement Agreements, They Have Alleged Viable Promissory Estoppel Causes of Action

On the promissory estoppel causes of action, the deputy appellants prayed for reinstatement, "all emoluments of employment, including . . . medical benefits and contributions to . . . retirement," and damages in excess of $25,000.  Appellants appear to argue that even if the department personnel who executed the settlements lacked authority to do so, "the application of estoppel would still be appropriate."  We disagree.

"A promise that the promisor reasonably should expect to induce action or forbearance and that does induce action or forbearance is binding under the equitable doctrine of promissory

---

[30]  Respondents seek judicial notice of "Los Angeles Sheriff's Department Organizational Charts, dated April 3, 2017 and June 5, 2018" to support their arguments that "County Counsel sits at the helm of the legal advisors to the Department's internal processes—including the Advocacy Unit, described in section 2-04/010.15[,]" and that "County Counsel represents the County in the Department's disciplinary matters and Civil Service Commission proceedings."  We deny respondents' request because the organizational charts have no apparent bearing on whether the department manual grants the sheriff and his subordinates the authority to settle disciplinary appeals on behalf of the county.  (See *State Comp. Ins. Fund, supra,* 50 Cal.App.5th at p. 442 [denying a request for judicial notice of "materials . . . not relevant to [the appellate court's] determination of the issues on appeal"].)

estoppel if enforcement of the promise is necessary to avoid an injustice.  [Citation.] . . . Promissory estoppel may not be invoked against a governmental entity if ' "it would operate to defeat the effective operation of a policy adopted to protect the public." [Citation.]' [Citation.]" (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 861, fn. 16.)

Appellants claim their invocation of promissory estoppel would not defeat public policy because:  "[T]here is no evidence of any nefariousness; no attempt to subvert existing procedures or policies.  Instead, in accordance with 40 years of practice, three deputies settled their administrative disciplinary appeals with their Department, agreeing to substantial penalties in exchange for removing the potential of termination.  Public policy should support requiring public agencies to abide by their promises and agreements and not permit them to later shirk their legal obligations based on new legal theories and practices developed in response to political pressures."[31]

Appellants fail to establish that allowing them to pursue claims of promissory estoppel against the county would not frustrate public policy.  To reiterate, "[a] county may exercise its powers only through the board of supervisors or through agents and officers acting under authority of the board or authority conferred by law." (Gov. Code, § 23005.)  Appellants have not identified any provision of the charter or other legal authority that empowered department personnel to settle the deputy appellants' commission appeals at issue here.  (See Discussion,

_____

[31]  By referring to "political pressures," appellants appear to be alluding to their claim that the county had successfully challenged the then-sheriff's authority to rehire a former deputy sheriff, who had been terminated.

45

part B, *ante.*)  Promissory estoppel thus is not available to defeat the public's interest in ensuring that only the board of supervisors, its agents and officers, and other officials acting under authority conferred by law have the power to incur liability on behalf of the county.[32]  (See *Dones v. Life Ins. Co. of North America* (2020) 55 Cal.App.5th 665, 694 [recognizing that "the public policy served by limiting [a c]ounty's contractual liability to contracts entered in accordance with legislatively prescribed procedures" can counsel against allowing a claim of estoppel to proceed against that entity].)

As noted in Discussion, parts E and G, *post,* appellants should be granted leave to amend as to their promissory estoppel causes of action.

## D.  Appellants Do Not Establish the Trial Court Committed Reversible Error In Sustaining the Demurrer to Their Declaratory Relief Cause of Action

In their petition/complaint, appellants sought two declarations in connection with their tenth cause of action: (1) "that the County must comply with the terms of settlement agreements it enters into, by and through the Department, during the pendency of administrative discipline cases such as the John Doe I Settlement Agreement, John Doe II Settlement Agreement and Jane Doe Settlement Agreement"; and (2) "that the recently changed practice of requiring approval of settlements of disciplinary cases from both the Los Angeles County Counsel

---

[32]  For example, according to appellants' briefing, the settlement at issue for Deputy Jane Doe restored to "her the salary and benefits of the position of deputy sheriff . . . ."

46

and the Director of Personnel for the County violates the due process rights of ALADS's represented employees by removing the ability of the Sheriff's Department to settle disciplinary cases at pre-deprivation hearings with members of the Sheriff's Department held pursuant to *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194."

On appeal, appellants argue they had alleged facts that, if ultimately proven, would warrant declaratory relief in their favor. Appellants further contend the trial court erred in sustaining the demurrer to this cause of action because they were "entitled to a judicial declaration even if the declaration [were] adverse."[33]

We reject appellants' first requested declaration because they have not shown department personnel have the authority to settle appeals of discipline before the commission. (See Discussion, part B, *ante*.) Accordingly, appellants are not

---

[33] Although appellants styled their tenth cause of action as a claim for "declaratory relief" in their petition/complaint, they prayed for not only declaratory relief on this cause of action, but also for "[a]n injunction preventing the County from refusing to comply with the terms of settlement agreements it enters into, by and through the Department, during the pendency of administrative discipline cases such as the John Doe I Settlement Agreement, John Doe II Settlement Agreement and Jane Doe Settlement Agreement." By failing to address this claim for injunctive relief in their briefing, appellants have abandoned any claim the trial court erred in sustaining the demurrer to this aspect of their tenth cause of action. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 ["Issues not raised in an appellant's brief are deemed waived or abandoned."].)

47

entitled to a declaration that the county must comply with unauthorized settlements of pending commission appeals.

Regarding appellants' second request for a declaration concerning their asserted due process rights, appellants reason that "[i]f a pre-deprivation hearing is necessary to comply with due process [citation], the rights following the issuance of the final notice of termination should also include the ability to negotiate an amicable and mutually beneficial agreement."[34] (Citing *Skelly*, *supra*, 15 Cal.3d 194.)

Appellants' theory appears to be a procedural due process claim, given that "[p]rocedural due process . . . focuses upon the essential and fundamental elements of fairness of a procedure which would deprive the individual of important rights."[35] (*In re*

---

[34] Appellants alleged in their pleading that the county violated the due process rights of ALADS's represented employees "by removing the ability of the Sheriff's Department to settle disciplinary cases at *pre*-deprivation hearings with members of the Sheriff's Department held pursuant to *Skelly* . . . ." (First italics added.) Yet, in the portion of appellants' opening brief that discusses their due process theory, they argue that an employee and the department should be permitted to enter into a settlement "following the issuance of the *final* notice of termination" (italics added), suggesting they are now claiming the county violates due process by refusing to settle *after* the *Skelly* stage of the disciplinary proceedings. Both theories fail for the reasons stated in the text of this part.

[35] Insofar as appellants maintain that the trial court should have treated this theory as a substantive due process claim, they fail to raise that point cogently. (See *Hernandez*, *supra*, 37 Cal.App.5th at p. 277; see also *Rental Housing Owners Assn. of Southern Alameda County, Inc. v. City of Hayward*

48

*Crystal J.* (1993) 12 Cal.App.4th 407, 412.)  We first set forth the applicable legal principles, and then explain that appellants make no effort to apply those principles to their due process theory.

" 'The first inquiry in [a] due process challenge is whether the plaintiff has been deprived of a protected interest in "property" or "liberty." [Citations.] . . . .' [Citations.]"  (See *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 214 (*Today's Fresh Start, Inc.*).) In lieu of a " 'protected property interest,' " the plaintiff may " ' "identify a statutorily conferred benefit or interest of which he or she has been deprived to trigger procedural due process under the California Constitution . . . ." ' "  (See *Barri v. Workers' Comp. Appeals Bd.* (2018) 28 Cal.App.5th 428, 462–463.)

" '[O]nce it is determined that the Due Process Clause applies, "the question remains what process is due." ' [Citations.]"  (*Today's Fresh Start, Inc.*, *supra*, 57 Cal.4th at p. 214.)  To answer that question, courts consider three factors: " 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' [Citations.]"  (See *id.* at p. 213, quoting *Mathews v. Eldridge*

_____

(2011) 200 Cal.App.4th 81, 93 ["Substantive due process protects against 'arbitrary legislative action, even though the person whom it is sought to deprive of his right to life, liberty or property is afforded the fairest of procedural safeguards.' "].)

49

(1976) 424 U.S. 319, 335.) "[W]e may also consider a fourth factor [when assessing alleged violations of the state due process clause], ' "the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official." ' [Citations.]" (See *Today's Fresh Start, Inc.*, at p. 213.)

Appellants do not claim to possess a protected liberty or property interest, or a statutorily conferred benefit or interest, in having an opportunity to settle disciplinary matters with the department. Insofar as appellants claim to have a protected right to employment with the department, they still fail to demonstrate that procedural due process entitles them to the opportunity to settle disciplinary charges. Instead of analyzing their proposed procedural safeguard under the applicable factors set forth above, appellants simply claim that without it, "deputies and other individuals [would] be forced to proceed through an administrative appeal when neither the Department nor the deputy wishes to place the final determination in the hands of a third party." Absent any relevant analysis by appellants, we do not consider appellants' due process argument further. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 ["We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' "].)

Finally, appellants argue that even if they cannot secure a judicial declaration in their favor on the tenth cause of action, the trial court should have overruled the demurrer because they alleged facts sufficient to establish the existence of an actual

50

controversy concerning the validity of the department's settlements and county counsel's "blanket refusal . . . to approve" them. Assuming for the sake of argument the trial court erred in sustaining the demurrer to this cause of action, any such error would not warrant reversing the order sustaining the demurrer. That type of "technical" error is "harmless if[,]" as is the case here, "the substantive claim" underlying the request for declaratory relief "is legally untenable." (See *Teresi v. State of California* (1986) 180 Cal.App.3d 239, 245, fn. 4.)

For these reasons, appellants fail to demonstrate the trial court erred prejudicially in sustaining the demurrer to their tenth cause of action for declaratory relief. As set forth in Discussion, part G, *post*, however, appellants should be granted leave to amend vis-à-vis their declaratory relief cause of action, except insofar as it is predicated on appellants' procedural due process theory.

## E. Appellants Should Be Afforded Leave to Amend To Demonstrate the Sheriff and His Subordinates Were Authorized To Execute the Settlements

The trial court denied appellants leave to amend their first pleading against respondents. " '[F]or an original complaint, regardless of whether the plaintiff has requested leave to amend, it has long been the rule that a trial court's denial of leave to amend constitutes an abuse of discretion unless the complaint "shows on its face that it is incapable of amendment." [Citations.]' " (*Tarrar Enterprises, Inc. v. Associated Indemnity Corp.* (2022) 83 Cal.App.5th 685, 688–689 (*Tarrar Enterprises, Inc.*).) " ' "Denial of leave to amend [an initial complaint] is appropriate only when it conclusively appears that there is no

51

possibility of alleging facts under which recovery can be obtained. [Citation.]" [Citation.]' " (See *id.* at p. 689.)

As we explained in Discussion, part A, *ante*, the trial court erred in finding that section 21 confers upon county counsel the exclusive authority to settle disciplinary appeals before the commission. We also held that appellants' failure to demonstrate that the sheriff and his chiefs were authorized to execute those settlements on behalf of the county is fatal to their contract, mandamus, and estoppel causes of action and part of their claim for declaratory relief. (See Discussion, parts B–D, *ante*.)

For the reasons set forth below, we conclude, however, there is a reasonable possibility appellants could remedy this defect and that appellants should be afforded the opportunity to do so. Specifically, we explain that the department allegedly has maintained a longstanding view that the sheriff and his subordinates are authorized to settle appeals before the commission. We explain below that appellants may be able to ascertain the basis (if any) for that position during discovery if the judgment were reversed. Additionally, respondents have not shown that granting appellants leave to amend would be an exercise in futility. In light of these factors, we conclude appellants' initial pleading does not " ' "show[ ] on its face that it is incapable of amendment[,]" ' " meaning the trial court abused its discretion in denying appellants leave to replead their contract and estoppel claims.**36** (See *Tarrar Enterprises, Inc.*, *supra*, 83 Cal.App.5th at p. 689.)

---

**36** We address whether leave to amend should be granted as to the mandamus and declaratory relief causes of action in Discussion, parts F–G, *post*.

52

    *1.     There is a reasonable possibility that appellants could allege facts, or proffer judicially noticeable documents, showing the sheriff and his subordinates are authorized to settle appeals before the commission*

First, appellants alleged in their petition/complaint that "[s]ince at least 1980, no signatory, approval, or agreement was required for the lawful execution of an enforceable settlement agreement related to a disciplinary dispute other than the affected ALADS member and the Captain or Chief responsible for the discipline decision." Appellants further asserted that "[a]t all times since at least 1980, . . . the County, Board of Supervisors, and Sheriff's Department, have . . . acted" as if "the authority of a Department Captain and/or Chief to resolve any pending dispute concerning a disciplinary action continues unabated through at least the duration of any pending Civil Service appeal proceedings." These allegations are presumed to be true at the demurrer stage. (See *Santa Ana Police Officers Assn.*, *supra*, 13 Cal.App.5th at pp. 323–324 ["We assume the truth of the properly pleaded factual allegations . . . ."].)

Second, the excerpts from the manual described in Discussion, part B, *ante*, are arguably consistent with appellants' theory that the department has taken the position that its personnel are authorized to settle disciplinary appeals before the commission. These excerpts support the reasonable inference that there may exist other documents potentially establishing that the sheriff and his subordinates have this authority.

Third, the record indicates that if the trial court had granted appellants leave to amend after it sustained respondents' demurrers to the original petition/complaint, appellants could have discovered the basis (if any) of the department's alleged

belief that its officials may lawfully execute these settlements, and appellants thereafter could have amended their petition/complaint accordingly. During the proceedings below, appellants sought discovery from the county of "[a]ll communications between the Sheriff's Department and the County Counsel concerning the settlement agreement entered into between [each deputy appellant] and the Sheriff's Department." Appellants also requested "[a]ll documents concerning the settlement agreement entered into between [each deputy appellant] and the Sheriff's Department." The county objected to these discovery requests on several grounds, including attorney-client privilege, work product doctrine, deliberative process privilege, official information privilege, overbreadth, and undue burden.

Appellants moved to compel the county to provide further responses to these requests for production; the County opposed the motion. The trial court did not reach the substance of appellants' motion to compel because it took the matter off calendar upon sustaining respondents' demurrer to the second, third, fifth, sixth, eighth, ninth, and tenth causes of action without leave to amend. If the court had instead sustained the demurrer to those causes of action with leave to amend, the court may have granted all or part of the motion to compel, thereby affording appellants an opportunity to discover the potential underpinnings of the department's alleged position that its personnel can settle civil service commission appeals.

### 2. *Respondents fail to establish that appellants cannot show the sheriff and department personnel may settle appeals pending before the commission*

We acknowledge that "[w]e may affirm the judgment on any ground apparent from the record, regardless of the grounds upon which the trial court sustained the demurrer." (*Jones v. Whisenand* (2017) 8 Cal.App.5th 543, 550.) This general principle of appellate review, however, does not obligate us to scour the record and construct legal grounds in support of the judgment. (See *D.N.*, *supra*, 56 Cal.App.5th at p. 767; *Inyo Citizens for Better Planning*, *supra*, 180 Cal.App.4th at p. 14.)

In their briefing, respondents advance several arguments in favor of affirmance that seem to be independent of their proffered construction of section 21. Specifically, respondents argue: (1) "the trial court could have also sustained the demurrer based on the [administrative] exhaustion doctrine" because the deputy appellants' proceedings before the commission were still pending when they filed suit; (2) the director of personnel, but not the sheriff or his subordinates, is a "delegated representative" of the board of supervisors that is empowered to enter into a "pre-decision resolution" of an appeal before the commission; and (3) the settlements are void under Government Code section 25203 because the board of supervisors did not approve them. For the reasons set forth below, we conclude respondents have not " ' "conclusively" ' " shown " ' "that there is no possibility of [appellants] alleging facts under which recovery can be obtained. [Citation.]" [Citation.]' " (See *Tarrar Enterprises, Inc.*, *supra*, 83 Cal.App.5th at p. 689.)

First, during the proceedings below, the trial court acknowledged "[t]he general rule is that 'a party must exhaust

55

administrative remedies before resorting to the courts.' [Citation.]" (Quoting *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080.) The trial court rejected respondents' contention that appellants' failure to exhaust administrative remedies rendered their claims legally defective: "This requirement does not apply here because [the deputy appellants] are not seeking disciplinary review. When [the deputy appellants] were seeking such relief before the Commission, they allegedly entered [into] a settlement agreement, which was breached. While [the deputy appellants] seek the same relief they could get from the Commission—reinstatement—the basis for this relief is the breached agreement, independent of the Commission's disciplinary review."

Although respondents cite the exhaustion defense in their briefing, they make no effort to rebut the trial court's rationale for rejecting that defense. They have thus failed to overcome the presumption of correctness accorded to the trial court's finding that the deputy appellants did not have to exhaust administrative remedies before filing the instant suit. (See *Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.* (1999) 75 Cal.App.4th 110, 118 ["[T]he general rule [is] that trial court rulings are presumed correct."].)

Next, respondents maintain that the director of personnel, but not the sheriff or his subordinates, is a "duly delegated officer" authorized to execute a "settlement agreement before the Commission enters a final order" on an employee's appeal. They rely on section 32 of the charter, which provides in pertinent part: "The Board of Supervisors shall appoint the Director of Personnel who shall under the general direction of the Board of Supervisors,

56

administer the Civil Service system in accordance with the provisions of this Charter and the Civil Service Rules." The respondents also cite civil service rules 3.03.B and 3.03.C for the proposition that even though the director of personnel "may delegate . . . authority regarding personnel decisions," the official "retains the power to review and revoke that authority." They further claim that civil service rules 17.01 and 17.02 establish that the "Director of Personnel controls employee reinstatement."**37**

Inasmuch as respondents claim these authorities establish appellants cannot amend to allege facts, or offer judicially noticeable materials, showing that department personnel are authorized to execute settlements of disciplinary appeals before the commission, we are unpersuaded.

The clause from section 32 of the charter upon which respondents rely indicates only that the director of personnel administers the civil service system, and does not address whether a settlement of an appeal before the commission requires the director's approval.

---

**37** In a string citation that includes several other authorities, respondents also cite rules 3.01 to 3.03 of the civil service rules after the following textual sentence: "[The instant civil service appeals] could, thus, not be resolved without authorized approval of the County—through the Board and/or the Director of Personnel—or its designated lawyers." They provide no explanation or analysis as to how, if at all, rules 3.01, 3.02, and 3.03 substantiate that assertion. We thus do not further address that issue. (See *People v. Evans* (2011) 200 Cal.App.4th 735, 756, fn. 12 [rejecting a contention advanced by a respondent in support of the judgment because that party "fail[ed] to adequately support th[at] argument"].)

Rule 3.03 concerns the director of personnel's power to delegate, audit, and revoke "his or her authority in operational activities, such as, but not limited to recruitment and selection, and employee development . . . ." Respondents do not assert that settlement of an appeal before the commission constitutes an operational activity, let alone offer any authority for that proposition.

We observe that rule 17.01.A and rule 17.01.B of the civil service rules condition reinstatement on "approval by the director of personnel," and that rule 17.02 addresses the restoration of "rights acquired by an employee" "[u]pon reinstatement . . . ." Respondents, however, provide no analysis or authority showing whether, and if so, to what extent the director of personnel has discretion to determine whether reinstatement is proper, or whether the director of personnel's approval is merely a perfunctory, administrative requirement. Regardless, because appellants have not had an opportunity to discover the legal foundation (if any) for the department's apparent position that its personnel were authorized to execute the instant settlements (see Discussion, part E.1, *ante*), we are unable to conclude at this juncture that rules 17.01 and 17.02 constitute the exclusive means by which a former department employee may be reinstated. Resolution of that question must await another day.

Lastly, respondents argue in their initial appellate brief that Government Code section 25203 supports the judgment of dismissal. Section 25203 provides in pertinent part: "The board shall direct and control the conduct of litigation in which the county, or any public entity of which the board is the governing body, is a party; by a two-thirds vote of all the members, the board may employ counsel to assist the district attorney, county

58

counsel, or other counsel for the county or entity in the conduct of such actions . . . ." (Gov. Code, § 25203.)

In its order sustaining the demurrer to the breach of contract claims, the trial court apparently relied upon Government Code section 25203 for the proposition that the settlement agreements were not valid in the absence of board approval. Although respondents argue this interpretation of the statute is correct because "the term 'litigation' is used to refer to adversarial proceedings that take place before administrative bodies[,]" they do not support this assertion with any case law construing section 25203.[38]

In any event, regardless of whether an appeal before the commission constitutes "litigation" under that statute, respondents concede in their briefing that Government Code section 25203 does not preclude the board from delegating control of such litigation to one or more " 'agents[.]' " Because we do not know the legal basis, if any, for the department's alleged longstanding practice of settling disciplinary appeals before the commission, we cannot exclude the possibility that the board of

---

[38] Specifically, respondents cite *The Utility Reform Network v. Public Utilities Com.* (2008) 166 Cal.App.4th 522, and *Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, neither of which interpreted Government Code section 25203. (See *The Utility Reform Network*, at pp. 524, 537 [characterizing matters before the Public Utilities Commission as "administrative litigation" in the course of reviewing that agency's decision awarding attorney fees to an entity]; *Lusardi Construction Co.*, at pp. 981–985 [noting that the Department of Industrial Relations had warned a private contractor that it "could be subject to . . . civil and administrative litigation" for certain Labor Code violations].)

supervisors had delegated this authority to the department.  In short, even if we agreed with respondents' interpretation of section 25203, we would be unable to conclude that " 'the complaint "shows on its face that it is incapable of amendment." [Citations.]' "  (See *Tarrar Enterprises, Inc.*, *supra*, 83 Cal.App.5th at pp. 688–689.)

## F.     Appellants Should Be Afforded Leave To Replead Their Mandamus Causes of Action

As we noted earlier, the trial court sustained respondents' demurrer to the first, fourth, and seventh causes of action for writ of mandate, without leave to amend, for a reason independent of the validity of the settlement agreements.  The court found that appellants had sought "a writ of mandate specifically enforcing the contracts[,]" and that "[m]andamus relief under a breach of contract theory is improper."  Because we have concluded that appellants may be able to demonstrate that department officials were authorized to bind the county to the deputy appellants' settlement agreements (see Discussion, part E, *ante*), we next decide whether the trial court abused its discretion in denying leave to amend as to the mandamus causes of action on the ground that appellants cannot enforce these contracts via a writ of mandate.  We conclude that leave to amend should have been granted.

Code of Civil Procedure section 1085, subdivision (a) provides:  "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is

60

unlawfully precluded by that inferior tribunal, corporation, board, or person." (Code Civ. Proc., § 1085, subd. (a).) In turn, Code of Civil Procedure section 1086 states: "The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested." (*Id.*, § 1086.) "There are two essential requirements to the issuance of a traditional writ of mandate: (1) a clear, present and usually ministerial duty on the part of the respondent, and (2) a clear, present and beneficial right on the part of the petitioner to the performance of that duty." (*California Assn. for Health Services at Home, supra*, 148 Cal.App.4th at p. 704.)

We agree with the trial court that " '[a]s a general proposition, mandamus is not an appropriate remedy for enforcing a contractual obligation against a public entity. [Citations.]' [Citations.]" (*300 DeHaro Street Investors v. Department of Housing & Community Development* (2008) 161 Cal.App.4th 1240, 1254 (*300 DeHaro Street Investors*).)

Our Supreme Court, however, has recognized that under certain circumstances, a contract between a public entity and a public employee can be enforced by a writ of mandamus. In *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328 (*Glendale City Employees' Assn., Inc.*), the high court remarked: "The usual remedy for failure of an employer to pay wages owing to an employee is an action for breach of contract; if that remedy is adequate, mandate will not lie. [Citation.] But often the payment of the wages of a *public* employee requires certain preliminary steps by public officials; in

61

such instances, the action in contract is inadequate and mandate is the appropriate remedy." (*Id.* at p. 343.)

In *Glendale City Employees' Assn., Inc.*, an association of employees of the City of Glendale and certain members thereof secured from the trial court a writ mandamus to compel that city and its councilmen to compute and pay compensation pursuant to a formula included in the employees' collective bargaining agreement with the city. (See *Glendale City Employees' Assn., Inc.*, *supra*, 15 Cal.3d at pp. 332–334.) In granting writ relief, the trial court concluded that "since 'enforcement of the rights of [plaintiffs] requires obtaining the official cooperation necessary to implement the application of the formula agreed upon in the Memorandum of Understanding. . . . [Plaintiffs] do not have a speedy or adequate remedy at law to prevent the deprivation of their rights other than by mandamus.' " (See *id.* at p 343, fn. omitted.) On appeal, the defendants did not "challenge the court's conclusion that plaintiffs have no other adequate remedy," but instead claimed that "the remedy of mandamus [was] not available" to compel "the adoption of a salary ordinance." (See *ibid.*) The Supreme Court rejected that argument, concluding that the writ "did not command the enactment of a new salary ordinance, but directed the non-legislative and ministerial acts of computing and paying the salaries as fixed by the memorandum and judgment."[39] (See *Glendale City Employees' Assn., Inc.*, at

_____

[39] Although the defendants in *Glendale City Employees' Assn., Inc.* did not contest the trial court's opinion that mandamus was the only adequate remedy available to the public employees (see *Glendale City Employee Assn., Inc.*, *supra*, 15 Cal.3d at p. 343), neither side characterizes as dictum the Supreme Court's statement to the effect that "mandate is the

62

p. 344; see also *ibid.* [" 'The critical question in determining if an act required by law is ministerial in character is whether it involves the exercise of judgment and discretion.' "].)

In *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2019) 42 Cal.App.5th 918 (*ALADS 2019*), the Court of Appeal relied on *Glendale City Employees' Assn., Inc.* to determine whether mandamus was a proper means of enforcing a contract with a public entity. There, ALADS brought suit against the county for allegedly "fail[ing] to comply with compensation provisions described in a November 2015 memorandum of understanding" (MOU), which "required the County to match compensation increases given to other County safety employee unions." (See *ALADS 2019*, at pp. 922–923.) On appeal from a judgment entered after the trial court sustained a demurrer, the county argued "ALADS failed to allege facts necessary" to support a "cause of action [that sought] a writ of mandate directing the respondents (i.e., the County and unnamed Doe parties) to 'act in compliance with their ministerial duty under the ALADS MOU by providing individuals represented by ALADS with equivalent economic enhancements to those provided to individuals represented by [another public safety union].' " (See *id.* at pp. 924, 938–939.) Among other things, the

_____

appropriate remedy" if implementation of a contract with a public employee "requires certain preliminary steps by public officials . . . ." (See *ibid.*) Regardless of whether this statement from the Supreme Court's decision is dictum, we follow it. (See *California Amplifier, Inc. v. RLI Ins. Co.* (2001) 94 Cal.App.4th 102, 114 ["[L]egal pronouncements by the Supreme Court are highly probative and, generally speaking, should be followed even if dictum."].)

county argued that this cause of action is "a 'blatant attempt to turn ALADS' contract claims into a petition for writ of mandate.' " (See *id.* at p. 939.)

In rejecting the county's challenges to this mandamus cause of action, the Court of Appeal found that *Glendale City Employees' Assn., Inc.*'s analysis "control[led.]" (See *ALADS 2019*, *supra*, 42 Cal.App.5th at p. 939.) The *ALADS 2019* court cited with approval our high court's conclusion that "the payment of a public employee's wages often requires preliminary steps by public officials, and that, in such instances, 'the action in contract is inadequate and mandate is the appropriate remedy.' [Citation.]" (See *ibid.*, quoting *Glendale City Employees' Assn., Inc., supra*, 15 Cal.3d at p. 343.) Nevertheless, because "ALADS did not name as defendants the appropriate County officials responsible for computation and payment of the benefits it claims its members are due based on the MOU[,]" the Court of Appeal remanded the matter and directed the trial court to give ALADS "leave to amend to name those officials."[40] (See *ALADS 2019*, at pp. 939–940.)

During the proceedings below in the matter before us, the trial court found neither *Glendale City Employees' Assn., Inc.* nor *ALADS 2019* established that appellants can obtain mandamus relief. The trial court reasoned that "both cases involved mandamus causes of action raised in the context of enforcing a collective bargaining memorandum of understanding—an express

---

[40] In the instant case, appellants named as defendants the county, the board of supervisors, the sheriff's department, the sheriff, the county counsel, and the director of personnel. Respondents do not claim that appellants would need to join any other county officials to pursue their mandamus claims.

carve out to the general prohibition" against utilizing mandamus to " 'enforce a contractual obligation against a public entity.' " Although the contract at issue in each case was a collective bargaining memorandum of understanding, neither decision stated that only collective bargaining agreements are exempt from the general rule that mandamus cannot be used to enforce a contract against a public entity. (See *Glendale City Employees' Assn., Inc.*, *supra*, 15 Cal.3d at pp. 343–344; *ALADS 2019*, *supra*, 42 Cal.App.5th at pp. 938–940.)

Additionally, the trial court observed *300 DeHaro Street Investors* establishes that "the duty which mandamus enforces is not the contractual duty of the entity, but the official duty of its officer or board." (Citing *300 DeHaro Street Investors*, *supra*, 161 Cal.App.4th at p. 1254.) Respondents rely upon the *300 DeHaro Street Investors* decision for essentially the same proposition, to wit, "the existence of a contract does not create a ministerial duty to perform that contract." (Citing *300 DeHaro Street Investors*, at p. 1254.) Although we agree that "[m]andamus will not lie to enforce a *purely* contractual obligation" (see 8 Witkin, Cal. Procedure (6th ed. 2021) Extraordinary Writs, § 80, p. 953, italics added), *Glendale City Employees' Assn., Inc.* and *ALADS 2019* establish that mandamus is proper insofar as public officials would need to undertake certain ministerial duties to implement a contract with a public employee. (See *Glendale City Employees' Assn., Inc.*, *supra*, 15 Cal.3d at p. 343; *ALADS 2019*, *supra*, 42 Cal.App.5th at p. 939; see also *San Diego City Firefighters, Local 145*, *supra*, 206 Cal.App.4th at p. 613, fn. 15 ["Case law permits a party to pursue a writ of mandate under Code of Civil Procedure section 1085 as a means to compel a public agency to

65

take nondiscretionary action necessary to comply with a contractual obligation[,]" citing, inter alia, *Glendale City Employees' Assn., Inc.*, at pp. 343–345].)

We recognize the Court of Appeal in *300 DeHaro Street Investors* stated that " 'the duty which the writ of mandamus enforces is not the contractual duty of the entity, but the official duty of the respondent officer or board[,]' " and that " ' "the law imposes upon municipal corporations and their officers no special duty to carry out the terms of contracts or to refrain from breaches of contractual relations." ' " (*300 DeHaro Street Investors*, *supra*, 161 Cal.App.4th at p. 1254.) Yet, the *300 DeHaro Street Investors* court made these statements in a context inapposite to the claims before us.

There, an owner of real property and a state agency had executed an agreement under which the owner would receive a low-interest loan if the owner rented units to low-income households. (See *300 DeHaro Street Investors*, *supra*, 161 Cal.App.4th at p. 1243.) The contract "called for the [agency] to approve specified rent increases if [the owner] proved specified matters to the [agency's] satisfaction." (See *ibid.*) Upon the agency's denial of the owner's request for a rent increase, the owner brought suit for declaratory relief and to recover damages for breach of contract. (See *id.* at pp. 1244–1246, 1248.) The trial court sustained the state agency's demurrer, and on appeal from the resulting judgment, the Court of Appeal concluded that the owner could pursue its contract claim, and that the owner was not relegated to seeking only a writ of mandamus against the agency, because the agency's liability arose from a contract. (See *id.* at pp. 1254–1257.) The Court of Appeal also concluded that the agency forfeited its contention

66

that the owner could not obtain declaratory relief to review an administrative decision.  (See *id.* at p. 1257.)  The opinion does not address whether agency officials would have needed to undertake any preliminary, ministerial steps in order to provide the owner with the damages and declaratory relief it had sought.  (See *id.* at pp. 1254–1257 [the court's discussion regarding whether the owner was required to pursue mandamus under Code Civ. Proc., § 1085].)  Simply put, *300 DeHaro Street Investors* does not foreclose appellants from seeking mandamus relief in the instant case.  (See *In re H.E.* (2008) 169 Cal.App.4th 710, 721 [" 'Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered.' "].)

In addition, appellants' briefing indicates that if they were granted leave to amend, they could show that implementation of the settlements would "require[ ] certain preliminary steps by public officials" giving rise to mandamus claims.  (See *Glendale City Employees' Assn., Inc.*, *supra*, 15 Cal.3d at p. 343.)  More specifically, in their opening brief, appellants claim that to "carry out the obligations of the contracts[,]" county officials need to discharge "duties" that are "ministerial in nature," to wit, "restoring [a]ppellants to their positions and providing them with the emoluments of their employment . . . ."  Similarly, appellants claim in their reply brief that each settlement "give[s] rise to ministerial obligations[,]" including "the requirement to approve the settlement agreement, to reinstate the deputy, and to provide him or her [with] the emoluments of employment, as required by the agreement."

Even respondents' briefing suggests that to implement the settlements, county officials would need to carry out certain ministerial duties. Specifically, respondents contend in their supplemental opening brief that the "Director of Personnel controls reinstatement." We do not have to decide the merits of this contention,[41] but only note that even if respondents are correct on that point, it is possible that the director of personnel's duties relating to reinstatement are ministerial in nature.

Given these circumstances, we are unable to find " ' "there is no possibility of [appellants] alleging facts under which recovery can be obtained" ' " via their claims for writ of mandate. (See *Tarrar Enterprises, Inc.*, *supra*, 83 Cal.App.5th at p. 689.) The trial court thus abused its discretion in denying appellants leave to amend their initial petition/complaint to replead their claims for mandamus relief. (See *id.* at pp. 688–689.)

## G. Appellants Are Not Entitled to Leave To Replead the Portion of Their Declaratory Relief Cause of Action That Is Predicated on a Due Process Theory

We add one final note regarding the scope of appellants' leave to amend. If appellants show that the sheriff and his subordinates are authorized to settle appeals before the commission, then they would have cured the defect upon which the trial court's order sustaining the demurrer to their contract, estoppel, and declaratory relief claims (i.e., the second, third, fifth, sixth, eighth, ninth, and tenth causes of action) was premised, to wit, the settlement agreements are void. If

---

[41] Indeed, in our Discussion, part E.2, *ante*, we note that respondents fail to support this contention with legal authority or analysis.

68

appellants also demonstrate that implementation of the settlements requires county officials to undertake certain ministerial duties, then they would have stated viable mandamus causes of action as well (i.e., the first, fourth, and seventh causes of action). (See Discussion, part F, *ante*.)

We acknowledge, however, that a portion of appellants' tenth cause of action for declaratory relief is premised on a due process theory that appellants have failed to substantiate. (See Discussion, part D, *ante*.) Specifically, appellants have not shown the existence of a benefit or interest triggering procedural due process protections, and inasmuch as they claim to have a protected right to employment with the department, they fail to show that procedural due process guarantees them an opportunity to settle disciplinary charges. (See *ibid.*) Even if appellants demonstrated upon remand that department personnel are authorized to settle disciplinary appeals before the commission, appellants still would have failed to cure these defects in their due process theory. Accordingly, the trial court did not abuse its discretion in denying leave to amend as to the portion of appellants' tenth cause of action that alleged a due process violation. (See *Long v. Century Indemnity Co.* (2008) 163 Cal.App.4th 1460, 1468 [" '[L]eave to amend should *not* be granted where . . . amendment would be futile.' "].)

## DISPOSITION

We grant respondents' request for judicial notice of San Bernardino County Code section 12.1907, which is found within exhibit B of the request for judicial notice that respondents filed on March 22, 2023. We deny respondents' request for judicial notice of (1) the San Bernardino County Charter and (2) the remainder of the San Bernardino County

69

Code, both of which are found in exhibit B of respondents' March 22, 2023 request for judicial notice.  We deny respondents' May 10, 2023 request for judicial notice of "Los Angeles Sheriff's Department Organizational Charts, dated April 3, 2017 and June 5, 2018."

We reverse the trial court's judgment of dismissal, and remand with instructions to (1) vacate the court's February 5, 2021 and August 9, 2021 orders sustaining respondents' demurrers without leave to amend; (2) issue a new order (a) sustaining the demurrers as to the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth causes of action; (b) denying leave to amend vis-à-vis appellants' tenth cause of action insofar as it is predicated on a due process violation; and (c) granting leave to amend as to the first, second, third, fourth, fifth, sixth, seventh, eighth, and ninth causes of action and the remainder of the tenth cause of action; and (3) conduct further proceedings consistent with this opinion.  The parties are to bear their own costs on appeal.


                                        BENDIX, J.


We concur:



        ROTHSCHILD, P. J.                 WEINGART, J.


70

Filed 8/18/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS et al., | B316067 |
| Appellants, | (Los Angeles County Super. Ct. No. 19STCP05186) |
| v. | CERTIFICATION AND ORDER FOR PUBLICATION |
| COUNTY OF LOS ANGELES et al., | [NO CHANGE IN JUDGMENT] |
| Respondents. | |

The opinion in the above-entitled matter filed on July 27, 2023, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

CERTIFIED FOR PUBLICATION.

_____

ROTHSCHILD, P. J.          BENDIX, J.          WEINGART, J.